## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTWUAN ROBINSON,
      Plaintiff

    v.

KEITH CROT, EMMANUEL
VILLEGAS, and THE CITY OF
CHICAGO
      Defendants

No. 23 CV 14805

Judge Jeremy C. Daniel

### MEMORANDUM OPINION AND ORDER

Plaintiff Antwuan Robinson filed this lawsuit to redress alleged constitutional and state law violations by two Chicago Police Department officers, Defendants Keith Crot and Emmanuel Villegas (the "officer defendants"). (R. 1.)[1] Robinson also seeks to hold Defendant the City of Chicago ("the City") liable for the officer defendants' conduct. (*Id.*) All defendants have moved for summary judgment on all of Robinson's claims under Federal Rule of Civil Procedure 56. (R. 60.) For the reasons that follow, the defendants' motion for summary judgment is granted in part and denied in part.

### BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and the record, and they are undisputed unless otherwise noted. On June 2, 2023, officers Villegas and Crot were on patrol in the sixth district of Chicago traveling in separate police cars. (R. 67 ¶ 8.) Villegas observed a stationary gray Jeep in a no parking zone

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

with two occupants in the front seats. (*Id.* ¶ 10.) A street sign near Robinson's Jeep stated that parking was prohibited and that the area was a tow zone. (R. 71 ¶ 2.) Villegas' police car pulled alongside the passenger side of Robinson's car to conduct a traffic stop. (R. 67 ¶ 11.) Robinson was seated in the driver's seat of his Jeep with his friend Phil Rosario next to him in the front passenger seat. (*Id.* ¶ 13.) Robinson's keys were in the ignition, but the car was not moving. (*Id.*) Villegas then exited his vehicle to approach Robinson. (*Id.* ¶ 11.)

Much of what transpired next is disputed, but the undisputed facts are as follows. Upon Villegas' approach toward Robinson's car, an individual fled on foot. (*Id.*) Two officers pursued and eventually located that individual, later identified as Robert Council. (*Id.* ¶¶ 11, 15.) In Villegas' experience as an officer, individuals usually flee a traffic stop because they have contraband or a firearm and are trying to avoid arrest. (*Id.* ¶ 12.) Villegas, however, did not chase after Council. (*Id.* ¶ 15.) Instead, Villegas ordered Robinson out of his vehicle and then detained him. (*Id.* ¶ 13; R. 71 ¶ 9.) Villegas then placed Robinson in handcuffs and searched Robinson and his car. (R. 67 ¶ 16.) Villegas also asked Robinson to identify himself and to provide his identification. (*Id.*) Robinson did not provide his license, though he was handcuffed and not able to reach his license at this point. (*Id.*; R. 71 ¶ 13.) Robinson failed to otherwise identify himself. (R. 67 ¶ 16.)

The parties dispute many relevant facts regarding Villegas' approach towards Robinson's car. For instance, the defendants say that before Council fled, Council was sitting in the back of Robinson's car behind the driver's seat, whereas Robinson says

Council was standing on the sidewalk and that he does not know Council. (*Id.* ¶ 11; R. 71 ¶¶ 4, 8.) Because Villegas approached Robinson's car from the passenger side and Council was located somewhere in or near the driver's side, Villegas' body-worn camera (BWC) footage does not make clear exactly where Council was located before he fled. (R. 63, Ex. F at 19:49:10-20 ("Villegas BWC").)[2] So too for the BWC footage from one of the officers who chased after Council. (R. 63, Ex. H at 19:49:10-20 ("Avila BWC").) Further, the defendants say that Villegas smelled the odor of burnt and raw cannabis coming from Robinson's car "[u]pon approach," whereas Robinson says that the arrest report contradicts this assertion, that Villegas never once mentioned smelling cannabis, that Villegas assured Robinson he had nothing to worry about, and that the cannabis Villegas later found in Robinson's car was secured in a child-proof and odor-proof container. (R. 67 ¶ 13; R. 71 ¶ 14.)

At this point, with Robinson detained and the other officers attempting to locate Council, Officer Crot arrived on scene to assist Villegas. (R. 67 ¶ 15.) Crot approached Robinson, who was standing handcuffed behind his car after Villegas ordered Robinson to do so. (*Id.* ¶¶ 14, 18.) Crot then ordered Robinson to stay still. (*Id.* ¶¶ 18–19.) The parties dispute the events that transpired after this. The defendants assert that Robinson began walking away and failed to heed Crot's orders to stand still. (*Id.* ¶ 19.) Robinson says that he did not resist or disobey an order. (*Id.*) The BWC footage makes clear that Crot used force to restrain Robinson, but Crot's camera appears to have been pressed up on Robinson's body for most of the

---

[2] Citations to BWC footage refer to the time stamp as displayed in the top right corner of the footage.

3

interaction, so the footage does not capture with clarity the nature or extent of that force. (R. 63, Ex. G at 19:51:30-19:59:03 ("Crot BWC").) The parties dispute whether Crot's use of force was necessary, but it is undisputed that because of the force used, Robinson experienced physical pain and developed a lump on his wrist, though he was able to continue speaking with Crot. (R. 67 ¶¶ 19–24; R. 71 ¶ 11.)

While Crot engaged Robinson, Villegas used an onboard computer in a nearby police car to run Robinson's license plates in the LEADS system. (R. 67 ¶ 25.) The result of the LEADS search showed that Robinson's registration was suspended. (*Id.*) Robinson has since provided his Jeep's registration card, which he says shows his registration was active until August 31, 2023. (*Id.*; R. 71 ¶ 12.) After Villegas learned of Robinson's suspended registration, Robinson was arrested for three offenses: driving with a suspended or revoked car registration, failing to provide a driver's license, and parking in a tow zone. (*Id.* ¶ 26.) He was then taken to the police station by a different officer. (*Id.* ¶¶ 27–28.)

Villegas then drove Robinson's car to the police station before having it towed. (*Id.* ¶ 28.) Once he arrived at the station, Villegas searched Robinson's car and located a bag of what he suspected to be cannabis in the center console. (*Id.*) He also found Robinson's driver's license in the car. (R. 71 ¶ 13.) The parties dispute whether the cannabis was stored in a proper container, but they do not dispute that Robinson was then also charged with unlawfully transporting cannabis. (R. 67 ¶ 28.) Robinson was released the next day and all charges against him were eventually dismissed. (*Id.* ¶¶ 30–31.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is material if it affects the outcome of the case. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The nonmovant must present "specific facts showing that there is a genuine issue for trial" to defeat summary judgment. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018) (citing *Celotex*, 477 U.S. at 322). At this stage, the Court views the facts and reasonable inferences in a light most favorable to the non-moving party. *Id.* at 893 (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 814 (7th Cir. 2017).

As referenced above, the defendants rely on BWC footage from the officer defendants and one other officer who is not a party to this case. (*See generally* R. 59; R. 72.) "When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly contradicted by the footage." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). Stated differently, the Court need not manufacture a factual dispute or favor the nonmovant's version of events when that version is "blatantly contradicted by the historical facts captured on video record." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# ANALYSIS

## I. THE FOURTH AMENDMENT CLAIMS

Robinson has brought four Fourth Amendment claims under 42 U.S.C. § 1983: false arrest, wrongful detention, unreasonable search, and malicious prosecution.[3] Because Robinson was both searched and seized, his interaction with the officer defendants implicated the Fourth Amendment. U.S. Const. amend. IV. Robinson challenges the validity of the initial stop, subsequent arrest, and the later search of his car. (*See generally* R. 1; R. 66.) These are distinct events that require separate analyses. *See, e.g., Martin v. Marinez*, 934 F.3d 594, 596–98 (7th Cir. 2019); *Hicks v. Cook Cnty. Sheriff's Off.*, No. 15 C 6852, 2020 WL 1322844, at *9 (N.D. Ill. Mar. 19, 2020) ("Because probable cause existed to arrest him, *all* of the Defendants are entitled to summary judgment as to Smith's *arrest*. But there is still the issue of whether the *traffic stop* itself was reasonable in the first place."). The Court addresses each in turn.

### A. The Initial Stop

The interaction began as a traffic stop. (R. 67 ¶ 11.) Traffic stops are seizures under the Fourth Amendment and must be reasonable under the circumstances. *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016) (citing *Whren v. United States*,

---

[3] Robinson suggests that he has also brought a Fourth Amendment excessive force claim. (R. 66 at 1, 12–14.) The Court agrees with the defendants that Robinson brings a claim alleging retaliatory force under the First Amendment, not a claim alleging excessive force under the Fourth Amendment. (R. 72 at 9–11; R. 1 at 6–7.) Robinson provides no justification for raising this new claim for the first time in his summary judgment response brief, and the Court will not allow constructive amendment of Robinson's complaint. *Schmees v. HC1.com, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) (noting that "[i]t will rarely be appropriate" to allow constructive amendment for the first time in briefing).

517 U.S. 806, 809–10 (1996)). Generally, seizures are reasonable when supported by probable cause to believe an individual has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). But in some instances, officers can conduct an investigatory stop when they lack probable cause so long as they have reasonable suspicion of an individual's criminality. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). An officer has reasonable suspicion justifying an investigatory stop when that officer has "specific and articulable facts" giving rise to a "particularized and objective basis" for suspecting the person stopped of criminal activity. *Id.* at 21; *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018). Reasonable suspicion takes into account the totality of the circumstances at the time of the stop and requires something more than a hunch but less than probable cause. *United States v. Cole*, 21 F.4th 421, 433 (7th Cir. 2021).

The defendants point to three primary circumstances in contending that Villegas had reasonable suspicion as a matter of law to stop and detain Robinson. (R. 59 at 5–8.) Robinson argues that there are disputes of material fact on all three of those events that preclude summary judgment. (R. 66 at 5–10.) The Court considers the defendants' three primary arguments in view of the totality of the circumstances.

### 1. Parked in a no parking zone

The defendants first argue that Villegas had reasonable suspicion to believe that Robinson was violating a Chicago city ordinance prohibiting parking in no parking zones. (R. 59 at 6.) The Chicago Municipal Code prohibits parking at any place designated as a no parking zone. MCC 9-64-150(b). A parked car is one that is "unoccupied." MCC 9-4-010. The parties do not dispute that Robinson's car was

7

stationary in a "no parking zone" and that before Villegas seized Robinson, Villegas saw two occupants in the car. (R. 67 ¶ 10; R. 71 ¶ 2.)

The Court concludes that the defendants have not established that Villegas had reasonable suspicion as a matter of law to believe that Robinson was violating the parking ordinance. A parked car is one without occupants, and Villegas knew that Robinson's car was occupied. (R. 67 ¶ 10.) This precludes a grant of summary judgment, because an occupied car is not parked. *See McCullough v. Rodriguez*, No. 23 C 15991, 2024 WL 3791629, at *3–4 (N.D. Ill. Aug. 13, 2024). In *Rodriguez*, the officer defendants argued that their investigatory stop of the plaintiff was justified because they saw the plaintiff in his car situated in front of a sign that prohibited parking. *Id.* at *4. The court denied the defendants' motion for summary judgment on this basis because "a reasonable jury could find the officers knew" an occupied vehicle is not a parked vehicle, and therefore the plaintiff was not violating the law prohibiting parking in that zone. *Id.* So too here, as Villegas knew that Robinson's car was occupied before he stopped Robinson. (R. 67 ¶ 10.) The Court agrees with the reasoning in *Rodriguez* and concludes that the defendants have not shown as a matter of law that Villegas had reasonable suspicion of Robinson's criminality based on his alleged violation of the parking ordinance.[4]

The defendants' contention that *Kadlec v. City of Chicago* held "that both standing and parking are prohibited by 9-64-150(b)" is inaccurate. (R. 72 at 3) (citing *Kadlec v. City of Chicago*, 2021 IL App (1st) 192126-U, ¶ 8). *Kadlec* concerned "a

---

[4] The defendants have not argued that Villegas made a mistake of law or of fact.

vehicle [parked] in a location where signage indicated standing or parking was prohibited." *Id.* ¶ 3. Here, Robinson's car was parked in a "no parking zone." (R. 67 ¶ 10; R. 71 ¶ 2.) The defendants seem to suggest that the sign also prohibited standing, but the undisputed facts do not support that assertion and neither does the record. (R. 63 at 363; Villegas BWC at 19:50:34-38, 19:51:50.) The Court rejects the defendants' argument that a sign prohibiting parking also necessarily prohibits standing. *See, e.g., Rodriguez*, 2024 WL 3791629, at *4 (characterizing such an argument as a "tortured reading" of the ordinance).

### 2. Council's fleeing from the stop

The defendants next argue that Villegas had reasonable suspicion to detain Robinson based on Council fleeing. (R. 59 at 6–7.) There are two issues with the defendants' argument, one factual and one legal. First, the parties provide vastly different factual accounts of where Council was situated prior to fleeing. The defendants, citing to the BWC footage, contend that Council was in the back seat of Robinson's car before he exited to flee as officers approached. (R. 67 ¶ 11.) Robinson, however, contends that Council was standing on the sidewalk and that he does not even know Council. (*Id.*) Each side cites evidence in the record supporting their characterization of this material fact. (*Id.*; R. 71 ¶¶ 4, 8.)

The BWC footage does not allow a viewer to confidently determine whether Council was in Robinson's car, or to otherwise ascertain with sufficient certainty where he was in the moments immediately before he fled. (*See* Villegas BWC at 19:49:15-20; Avila BWC at 19:49:11-18.) Because the officers approached from the passenger side of Robinson's car and Council was somewhere in or near the driver's

side, the BWC footage only clearly shows Council after he began to run away—not before. Despite the defendants' assertion, the BWC footage does not "firmly settle[]" this factual dispute, nor does it "blatantly contradict[]" either account of the facts. *Horton*, 883 F.3d at 944; *Scott*, 550 U.S. at 380. Instead, the defendants' argument requires the Court to take as true many inferences the defendants present, such as: that a "thud" sound was the sound of a car door shutting, that Council must have fled from the car because he ran "through the grass parkway," that Villegas' asking of "what are you doing bro?" was directed at Council, and more. (R. 71 ¶ 4.) At this stage, the Court must construe the record and inferences therefrom in a light most favorable to Robinson, not the defendants. *Johnson*, 892 F.3d at 893.

Further, the Court is not convinced that Villegas has shown as a matter of law that Council's flight establishes reasonable suspicion of Robinson's criminality. Reasonable suspicion must be sufficiently particularized. *Rodriguez-Escalera*, 884 F.3d at 668 (noting that an officer must have reasonable suspicion "that the particular person stopped is breaking the law" to initiate a valid investigatory stop). The defendants cite cases supporting the proposition that a suspect's flight from officers gives those officers at least reasonable suspicion (if not probable cause) as to that suspect. (R. 59 at 7; R. 72 at 4–5.) But Robinson did not flee—Council did.

The Seventh Circuit has "recognized that simply being in the presence of others who are themselves suspected of criminal activity is insufficient standing alone to establish particularized suspicion for a *Terry* stop and frisk." *Matz v. Klotka*, 769 F.3d 517, 523 (7th Cir. 2014); *see also United States v. Segoviano*, 30 F.4th 613, 622 (7th

Cir. 2022). The defendants have not provided law challenging this principle, and their attempt to impute criminality to Robinson based on Council's flight necessarily fails. Even when considering the totality of the circumstances, the defendants have failed to show that Council's flight supports the requisite particularized suspicion needed to detain Robinson.

### 3. Odor of cannabis

Last, the defendants argue that upon Villegas' approach toward Robinson's car, he smelled the odor of "both burnt and raw cannabis." (R. 59 at 6.) Robinson responds with several facts suggesting that Villegas' suspicion regarding cannabis in the vehicle arose, if ever, after his detention and arrest. (R. 66 at 9–10.) For instance, Robinson points out that the arrest report states an officer smelled cannabis "during the field interview," which came after Villegas' approach. (*Id.* at 9.) He also observes that the BWC does not contain any audio of Villegas or any other officer referencing the odor of cannabis. (*Id.*) Instead, audio from the beginning of the interaction shows that Villegas told Robinson he had nothing to worry about. (*Id.*) The defendants are correct that the odor of cannabis can form the basis of reasonable suspicion or probable cause. *United States v. Jackson*, 103 F.4th 483, 489 (7th Cir. 2024). But as explained, the facts underlying such a conclusion here are contested. Because reasonable suspicion must exist at the time of the seizure, this dispute about the odor of cannabis is material. *United States v. Ienco*, 182 F.3d 517, 524 (7th Cir. 1999).

At this stage, the Court must view the facts in a light most favorable to Robinson. *Johnson*, 892 F.3d at 896. After considering the totality of the circumstances, there remain genuine disputes of material facts regarding all the

circumstances the defendants point to in arguing that Villegas had reasonable suspicion to stop Robinson. Given this conclusion, the Court turns to Robinson's Fourth Amendment claim for wrongful detention (Count II).

Robinson's wrongful detention claim is predicated on the alleged unconstitutionality of his initial stop and detention. (R. 1 ¶¶ 45–47; R. 66 at 5–6.) Based on the above, and considering the totality of the circumstances, the Court cannot say that, as a matter of law, Villegas had sufficiently particularized reasonable suspicion of Robinson's criminality. Instead, a reasonable jury could find for Robinson and decide that there was no reasonable suspicion to justify his stop and initial detention. *Liberty Lobby,* 477 U.S. at 248. This precludes summary judgment on Robinson's wrongful detention claim.

However, as explained below, Villegas eventually obtained probable cause to arrest Robinson. A seizure is reasonable when supported by probable cause. *United States v. Howard*, 729 F.3d 655, 659 (7th Cir. 2013). At trial, Robinson can pursue his wrongful detention claim, but he may only recover damages for this claim up until the point at which Villegas obtained probable cause to arrest him. *Marinez*, 934 F.3d at 605 (affirming partial grant of summary judgment limiting a plaintiff's damages recovery to "the brief initial seizure before" officers obtained probable cause); *see also Hicks*, 2020 WL 1322844, at *10 (limiting a plaintiff's illegal seizure claim on summary judgement to "the brief period when Smith was pulled over and before he was arrested"). Accordingly, the Court denies summary judgment on Count II.

### B. The Subsequent Arrest

Robinson was arrested for four offenses. (R. 67 ¶¶ 26, 28.) An arrest is also a seizure under the Fourth Amendment and is generally reasonable when supported by probable cause. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Probable cause exists when "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* The defendants argue that Villegas had probable cause to arrest Robinson for all offenses Robinson was charged with, along with resisting or obstructing an officer. (R. 59 at 5–8.) Robinson contends that Villegas lacked probable cause as to each charge. (R. 66 at 10–12.)

The Court begins with the defendants' contention that Villegas had probable cause to believe Robinson was operating his vehicle with a suspended registration. (R. 59 at 7.) In Illinois, operating a vehicle with a suspended or revoked registration is an arrestable offense. 625 ILCS 5/3-702. When Villegas approached, Robinson was in the driver's seat and his keys were in the ignition. (R. 67 ¶ 13.) Robinson "does not dispute that he was operating his vehicle at the time of the stop." (R. 76 at 1.) Later during the stop, Villegas "used an onboard computer in one of the police vehicles to run plaintiff's license plates, learning that plaintiff's registration plates were suspended." (R. 67 ¶ 25.)

Robinson's argument is that Villegas lacked probable cause because the stop occurred on June 2, 2023, and his registration card shows his Jeep was "lawfully registered until August 31, 2023." (R. 66 at 10.) Probable cause is based on the

reasonable belief of an officer based on all information known to that officer at the time of arrest. *Abbott*, 705 F.3d at 714. This means what matters is whether Villegas reasonably believed that Robinson's registration was suspended—not whether it was in fact suspended. *Bailey v. City of Chicago*, 779 F.3d 689, 695 (7th Cir. 2015). It was objectively reasonable for Villegas to believe that Robinson's registration was suspended when the LEADS system showed it as such. *See, e.g., Dakhlallah v. Zima*, 42 F. Supp. 3d 901, 908–09 (N.D. Ill. 2014) ("[A] reasonable arresting officer would have relied on LEADS, an official government database, in making a probable cause determination."). Accordingly, the Court concludes that Villegas had probable cause to arrest Robinson for operating a vehicle with a suspended registration.[5]

Based on this conclusion, the Court turns to Robinson's Fourth Amendment claims that challenge the constitutionality of his arrest: his claim for false arrest (Count I) and malicious prosecution (Count IV). (R. 1 ¶¶ 38–39, 60–62.) Robinson concedes that summary judgment should be granted on his malicious prosecution claim. (R. 66 at 1 n.1.) Further, based on the above, the Court concludes that Villegas had probable cause to arrest Robinson for operating a vehicle with a suspended registration.[6] Probable cause to arrest an individual for any offense bars a claim

---

[5] Because the Court concludes there was probable cause on this basis, it does not address whether there was probable cause to arrest Robinson on any other basis. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007).

[6] It appears Villegas learned that Robinson's car registration was suspended about seven minutes into the encounter when Villegas accessed a computer in a police vehicle. (Villegas BWC at 19:55:43-19:56:05.) About two minutes later, Villegas tells Robinson he is being arrested in part because "your plates are suspended." (*Id.* at 19:57:41-45.) Moments later, Villegas said "plates suspended" to another officer before asking that officer to transport Robinson to the police station. (*Id.* at 19:57:49-54.)

under § 1983 for false arrest. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). The Court therefore grants summary judgment on Counts I and IV.

For clarity, the Court addresses the interaction between Robinson's wrongful detention claim addressed above (Count II), which survives summary judgement, and his false arrest and malicious prosecution claims (Counts I and IV), which do not. Regardless of the constitutionality of the initial seizure, Robinson's false arrest claim is still barred because probable cause supporting an arrest can be based on evidence or information obtained during an otherwise illegal stop. *Marinez*, 934 F.3d at 598–99; *see also Frobe v. Village of Lindenhurst*, No. 11 C 1722, 2014 WL 902878, at *4 (N.D. Ill. Mar. 7, 2014) (collecting cases). Stated differently, the constitutionality of Robinson's initial stop does not bear on his false arrest claim. *Id.* Because no triable issue of fact remains on Robinson's false arrest claim, and further because Robinson concedes summary judgment should be granted on his malicious prosecution claim, the Court grants summary judgment to the defendants on Counts I and IV.

## C. The Vehicle Search

After detaining and arresting Robinson, Villegas searched Robinson's car. (R. 67 ¶ 28.) Like seizures, searches are also subject to the Fourth Amendment's reasonableness requirement. *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019). While ordinarily a vehicle search is reasonable when conducted pursuant to a valid search warrant, there are exceptions to the warrant requirement that allow an officer to search a car without a warrant. *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

15

Robinson challenges the constitutionality of Villegas' search of his car (Count III).[7] (R. 66 at 2, 12.) Villegas searched Robinson's car after he transported Robinson to the police station, but before Villegas had the car towed. (R. 66 at 12; R. 67 ¶ 28.) During the search, Villegas found a bag of suspected cannabis in the car and then charged Robinson with transporting cannabis in an improper container. (R. 67 ¶ 28.) Neither party suggests that the search was conducted pursuant to a valid search warrant. Nor do the defendants state the exception that they believe authorized the warrantless car search. Their first argument is that because Villegas had "probable cause to believe Plaintiff was illegally carrying cannabis, there was probable cause to search" Robinson's car. (R. 59 at 7.) On reply, their argument is slightly broader: that because there was probable cause to arrest Robinson (for more than just illegal transport of cannabis), the search was proper. (R. 72 at 8–9.) Robinson seems to argue that Villegas conducted an inventory search but did so improperly because Villegas did not have "lawful custody" of the car. (R. 66 at 12.)

The Court concluded above that there remain genuine disputes of material fact regarding whether Villegas had reasonable suspicion based on the alleged odor of cannabis. Because probable cause is a higher bar than reasonable suspicion, *United States v. Booker*, 579 F.3d 835, 839 (7th Cir. 2009), the disputed scent of cannabis

---

[7] Robinson's brief limited his claim in two ways. First, while Robinson's complaint alleges an illegal search of Robinson's person and car, his summary judgment brief addresses only the legality of the car search. (R. 66 at 12.) Second, the BWC footage shows that Villegas searched the car twice: once immediately upon detaining Robinson, and once after transporting Robinson to the police station. (Villegas BWC at 19:51:50-19:53:18; *id.* at 20:08:10-20:11:30.) Robinson's brief only references the second search. (*See* R. 66 at 12.) Therefore, the Court understands Robinson to challenge only the second car search.

cannot form the basis of the car search at this stage. The Court interprets the defendants' second argument to invoke either the search incident to arrest exception or the automobile exception. But the defendants have not shown that either justifies Villegas' warrantless search of Robinson's car.

The search incident to arrest exception allows an officer to search a vehicle incident to a lawful arrest if the suspect is "within reaching distance" of the car or if an officer reasonably believes evidence "of the offense of arrest" exists. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (quoting *Gant*, 556 U.S. at 338). Villegas searched Robinson's car after Robinson was arrested and taken to the police station. (R. 67 ¶ 28.) At that time, he had only been arrested for parking in a no parking zone, operating a vehicle with a suspended registration, and failing to provide identification. (*Id.* ¶ 26.) The defendants have failed to show that this exception applies for several reasons. First, the defendants have not argued that there was probable cause to believe evidence of the offenses Robinson was arrested for existed in his car. Second, Robinson was not "within reaching distance" of the vehicle when the car was searched, as he was in the police station. *Edwards*, 769 F.3d at 514. Third, the search was conducted after Robinson was arrested, not "incident" to his arrest. *United States v. Willis*, 37 F.3d 313, 318 (7th Cir. 1994).

The automobile exception is broader, allowing an officer to search a car if the officer has probable cause to believe it contains evidence of any crime. *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010). The search need not be conducted contemporaneously with arrest, nor must it be tethered to the offenses for which the

17

suspect was arrested. *Edwards*, 769 F.3d at 514. The Court has already concluded that a factual dispute precludes a finding that Villegas had reasonable suspicion (and therefore probable cause) based on the odor of cannabis. The defendants have not offered any other reason Villegas had to believe there was evidence of any crime in the car besides a blanket assertion that there was probable cause to arrest Robinson. (R. 72 at 8–9.) But the defendants have not stated what "evidence of criminal activity" Villegas believed to exist in the car. *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015) (citing *Gant*, 556 U.S. at 347). The only cases cited by defendants explain that when officers have probable cause to believe an individual is illegally carrying cannabis, they have probable cause to search that individual and their vehicle. (R. 59 at 7.) But whether Villegas smelled cannabis remains in dispute and will be decided by the jury at trial.

Last, while the defendants do not argue the search was a valid inventory search, Robinson raises it, so the Court addresses it. (R. 66 at 12.) This exception allows an officer to search a car before having the car impounded or towed. *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id.* at 614. Because the record contains no evidence of (or even reference to) the Chicago Police Department's policies and procedures governing inventory searches, and because the record does not clearly establish the search to have been

18

an inventory search, the Court cannot conclude that the search was conducted properly under the inventory search.

Based on the above, a reasonable jury could conclude that the warrantless search of Robinson's car was unreasonable. *Liberty Lobby,* 477 U.S. at 248. Accordingly, the Court denies summary judgment on Count III.

## II. THE FIRST AMENDMENT CLAIM

Robinson's First Amendment claim (Count V) alleges that Crot retaliated with unnecessary force after Robinson told Crot to stop hurting him. (R. 66 at 14; R. 1 at ¶¶ 68–71.) The defendants argue that probable cause to arrest "should generally defeat a First Amendment retaliatory arrest claim," and that Crot's BWC footage shows that Crot used only necessary force. (R. 59 at 10; R. 72 at 11–12.) As to the defendants' first argument, the Court understands Robinson's claim to be that Crot used unreasonable force in response to Robinson's speech—not that Crot arrested Robinson due to his speech. While probable cause to arrest might defeat a "retaliatory arrest claim," that is not the claim Robinson is advancing here. Because the alleged retaliatory conduct here is not an arrest, the defendants' first argument fails.

Additionally, after reviewing the BWC footage, the Court disagrees with the defendants that "[t]here is no question as to what occurred." (*Id.* at 11.) Instead, after reviewing the footage, the Court is left with many questions regarding the nature and extent of Crot's force. At some points, the camera angle does not show the force used. At others, not much can be seen whatsoever due to Crot's camera being pressed up against Robinson's body. Robinson's factual assertions are not "clearly contradicted by the footage." *Pobjecky*, 883 F.3d at 944. This leaves a record rife with factual

disputes as to both the appropriateness of the force used during the encounter and whether Crot used force in response to Robinson's speech. Given these genuine disputes of material facts, the claim should be resolved by a jury. *Liberty Lobby*, 477 U.S. at 248. Accordingly, the Court denies summary judgment on Count V.[8]

### III. THE STATE LAW CLAIMS

#### A. False Imprisonment/Arrest

Robinson also alleges that he was falsely imprisoned and falsely arrested in violation of Illinois state law (Count VI). (R. 1 at ¶¶ 75–77.) He argues that the City is liable on a theory of *respondeat superior*. (*Id.* ¶ 80.) The defendants argue that probable cause to arrest Robinson precludes success on this claim. (R. 59 at 10–11.)

Under Illinois law, probable cause is an absolute bar to false imprisonment and false arrest claims. *Martel Enters. v. City of Chicago*, 584 N.E.2d 157, 161 (Ill. App. Ct. 1st Dist. 1991) (false imprisonment); *Gauger v. Hendle*, 954 N.E.2d 307, 327 n.6 (Ill. App. Ct. 2d Dist. 2011) (false arrest). The Court concluded above that Villegas had probable cause to arrest Robinson for operating a vehicle with a suspended registration. Accordingly, the Court grants summary judgment on Count VI.

#### B. Civil Battery

Robinson's civil battery claim (Count VII) alleges that Crot made harmful and offensive contact without his consent or lawful justification. (R. 1 ¶¶ 82–85.) He argues that the City is liable on a theory of *respondeat superior*. (*Id.* ¶ 87.) The

---

[8] The complaint erroneously numbered the claims, labeling this claim as a second Count IV instead of Count V. The Court uses the numbers of each Count as if they had been numbered in numeric order, such that the retaliation claim is Count V, the state law false imprisonment claim is Count VI, and the state law civil battery claim is Count VII.

defendants contend that because there was reasonable suspicion for the stop and probable cause for the arrest, Crot's use of force was justified to effect a lawful arrest. (R. 59 at 11–12.) They also repeat that the BWC footage "speaks for itself." (R. 72 at 10.)

The defendants are correct that a civil battery claim against an officer under Illinois law fails if the contact is made during a lawful arrest. *People v. Sims*, 871 N.E.2d 153 (Ill. App. Ct. 3d Dist. 2007). But the Court concluded above that disputes of material fact remain regarding the constitutionality of Robinson's initial seizure. Eventually, the arrest became lawful once Villegas had probable cause to arrest Robinson. Since there are genuine disputes of material fact regarding the constitutionality of the stop up until there was probable cause for Robinson's arrest, Robinson's civil battery claim can proceed to the extent Robinson alleges he was battered before there was probable cause for his arrest. Accordingly, the Court denies summary judgment on Count VII.

## IV. THE IMMUNITY ARGUMENTS

The defendants argue that they are immune from liability on Robinson's § 1983 claims and his state law claims. (R. 57 at 12–13.) The Court analyzes the immunity arguments as to the claims that have survived summary judgment.

### A. Qualified Immunity

The defendants argue they are entitled to qualified immunity on Robinson's § 1983 claims. (R. 59 at 12–13.) Qualified immunity shields officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Because the defendants have raised this defense, Robinson has the burden to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Neita v. City of Chicago*, 148 F.4th 916, 930 (7th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). However, disputes of material fact generally preclude a conclusion on summary judgment that an official is entitled to qualified immunity. *Ferguson v. McDonough*, 13 F.4th 574, 584 (7th Cir. 2021).

As discussed above, Robinson has shown that there remain genuine disputes of material fact regarding whether the initial seizure and search of his car was consistent with the Fourth Amendment, and whether Crot's conduct was retaliatory in violation of the First Amendment. The defendants' qualified immunity arguments assume their version of the facts and inferences to be true—but the Court cannot make that assumption at the summary judgment stage. *Johnson*, 892 F.3d at 893; *McDonough*, 13 F.4th at 584. The Court therefore rejects their qualified immunity arguments at this juncture.

### B. Illinois Tort Immunity Act

The defendants argue that they are entitled to immunity from suit under the Illinois Tort Immunity Act (the "Act") on Robinson's state law claims. (R. 59 at 13.) The Act provides, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The defendants argue that Crot's conduct was neither willful nor wanton. (R. 59 at 13.) While this may be true if the Court accepts the defendants' version of the facts, when viewing the facts most favorably to

Robinson, the Court again concludes that there are genuine disputes about the reasonableness of Crot's force. This precludes summary judgment on immunity under the Act at this stage. *Chelios v. Heavener*, 520 F.3d 678, 692–93 (7th Cir. 2008). Accordingly, the Court concludes that the defendants are not entitled to immunity under the Act.

## CONCLUSION

The defendants' motion for summary judgment [60] is granted in part and denied in part. The Court grants summary judgment on Counts I, IV, and VI, and denies summary judgment on Counts II, III, V, and VII. The parties shall submit a status report on or before January 30, 2026, that addresses the anticipated length of trial and the parties' availability for trial in February and March 2027.

Date: January 20, 2026

JEREMY C. DANIEL
United States District Judge